## David H. Stroud *v.* William T. Smith and William Smith, Trading as William T. Smith & Son, Appellants.

*Libel—Trade libel—Malice—Province of court and jury.*

In an action for libel it appeared that defendants issued notices to plaintiff's customers that the latter was infringing defendants' patent, and threatening suit if plaintiff continued to make or sell goods covered by the patent. The statement was false, inasmuch as the patent had expired. *Held,* that the question whether the notices had a tendency to deter customers from buying, and whether the latter were in fact so deterred, was a question for the jury, and not for the court.

Any error in giving instructions as to punitive damages is cured when the court, on plaintiff disclaiming such damages, said to the jury that, if this had come earlier, it would have saved much that he had stated, and told them, if they found for plaintiff, to give a verdict for the actual damages.

In an action for trade libel where the plaintiff disclaims any demand for damages unless for malicious issue of the publication, and, even in such case, limits his demand for damages actually or specially suffered, the defendants cannot complain because the court charges that if the jury find that defendants did not make an honest mistake, but did it maliciously, they might give a verdict for the plaintiff for the amount of the actual damages.

Argued Jan. 5, 1900. Appeal, No. 163, Jan. T., 1899, by defendants, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1897, No. 633, on verdict for plaintiff. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Trespass for trade libel.

Plaintiff's statement set forth that on or about January 1, 1898, he was a manufacturer of chenille curtains and covers, and was engaged in making a table cover of a certain "Peacock" pattern or design; that defendants on or about January 13, 1898, issued notices to plaintiff and to plaintiff's customers, alleging that defendants had a patent on said pattern, called "No. 440-A," and that plaintiff and his customers must desist from making or selling same, otherwise suit would be brought for infringement; that, in consequence of said notices, plaintiff's customers refused to purchase any more of said table covers from plaintiff, whereby he had a lot of them left on his hands; that at the time of said notice defendants had no title to a patent monopoly in said covers, in that the patent therefor had then expired; that said notice "was malicious and maliciously given for the purpose of unlawfully asserting a pretended claim to the exclusive use of said peacock pattern and with the intention of impairing the plaintiff's lawful business;" that plaintiff requested defendants to "withdraw the notice so given," which was not complied with.

One of the notices complained of was as follows:

"PHILADELPHIA, Dec. 20th, 1897.

"Mr. GEO. E. ALLEN,

"New York.

"Dear Sir: We understand that you are offering for sale a Peacock Cover which we consider a violation of our Patented Peacock pattern No. 440-A. If so, we will have to ask you to

discontinue selling it, as our pattern is patented, and we must protect our trade against infringement.  If you fail to comply with our request, we will have to instruct our attorneys to apply for an injunction restraining you from offering that cover for sale, and will also look for damage to our trade.  We will commence proceedings against the manufacturer for infringement at once, and we trust you will see the necessity of our action.  We remain,

> "Yours respectfully,
> "W. T. SMITH & SON."

The evidence showed that at the time this notice was sent out plaintiff's patent had expired.

The court charged in part as follows :

In any event, Mr. Smith must pay the damage, if any, which he caused Mr. Stroud by giving those notices.

Well, now, Mr. Smith says, "What about it?"  Why, Mr. Smith says, "Yes, I did send out those notices, but," he says, "I made a mistake "—I do not know that he puts it in those words—but his counsel, I have no doubt, elaborates his idea that "in the multitude of my business, having a large business, I overlooked the fact that the patent had run out.  I admit it was a mistake, but I did not mean to do any harm.  I innocently sent that notice out to Mr. Stroud and his customers. I thought I had the right to do it, in other words, but I find out now I am mistaken."  Well, what does that amount to? What does that amount to as a defense ?  Why, it amounts to this : If you believe that—if you believe Mr. Smith, when he sent out those notices did not know that his patent was run out—believed that his patent was in existence, and did this in good faith, then you can only give Mr. Stroud what he actually lost by reason of Mr. Smith's conduct.  But the plaintiff says that that is not the truth—that Mr. Smith says he sent that notice out by mistake—that is not the truth—and he calls your attention, through his counsel, to a number of things which he says ought to convince you that Mr. Smith did not make any mistake about it; that he did it on purpose; that he knew that he had no right to send that notice out, but he did it for the purpose of stopping Mr. Stroud's trade, and amongst other things he calls your attention to the fact that he never contra-

dicted it; that although he says he did, he never did; that he
never wrote to them and said he had made a mistake.   In other
words, he kept on letting the fruit of his bad work grow, and
he kept on letting it work its mischief to Mr. Stroud, and
never corrected it; and that is one evidence that he did not
make any honest mistake about it.   In other words, they ask
you to believe that Mr. Smith never did do this honestly, but
he did it for the purpose of driving Mr. Stroud out of the mar-
ket, and those letters, they say, show that to you—his constant
threats and the threats of his lawyers—and they show to you
that it is further shown by the tags on the table covers.

Now, you will pass upon that, and I think, gentlemen, if you
want to dispose of this case scientifically, that is, get at it in
the best possible way for yourselves, you will take up that
question first, and when you go out you will say, " Now let us
settle this thing.   Did Smith do this for the purpose of hurting
Stroud, when he knew he had no right to do so ? "   To use a
common expression, " Was this a bluff on his part to keep
Stroud from manufacturing these table covers, or did he do it
out of an honest mistake?   Was this a mistake ? "   Take up
that question and examine that first.   Examine all the testi-
mony on the subject, all that they did.   Look at their letters
and everything, and if you come to the conclusion that it was
an honest mistake ; that he did not do it out of any malice  or
any contemptible spirit to drive a competitor out of the busi-
ness, but that he did what he really thought he had a right to
do, then the measure of damages, which I will allude to a little
further on, in such a case, is only what Mr. Stroud lost.   But
if you come to the conclusion that it was  not a mistake ; that
he knew before, and was  doing it for  the  purpose of injuring
Mr. Stroud in his business and driving him out of the market
as a competitor, and that when he said, " My patent is still in
existence," he knew it was not; in other words, that it was a
malicious, fraudulent thing on his part, then Mr. Stroud is en-
titled to more than he actually lost, because you would have a
right to say, " We will do more  than  compensate Mr. Stroud.
We will punish Mr. Smith for such an outrage as that."   You
would  have a right to believe, if you  think it was done to in-
jure another man in business—you would  have a right to add
to the actual damage such an amount as would make him smart

for such kind of conduct,—what is called smart money; that is, damages to punish him.

As I have said, you will examine the testimony in settling that matter. After you have settled it one way or the other, you will come to the question of what the measure of damages should be, as I have already alluded to. If you come to punitive damages, there is no measure for them. It is just what you think the circumstances require as a punishment for such a wrongful act. But if you do give punitive damages in any respect, Mr. Stroud would be entitled to what he has lost. Well, what has he lost? Well, he says he has lost a good many items. But you are not bound by what he says on the subject. You are to take his own judgment on the subject. He says, "I lost sales by reason of the fact that my customers were notified that they would buy a lawsuit if they bought the table covers, and that, therefore, they would not buy them." Now, is that the reason? He says he did not sell them. Was the notice the reason? If it was, then that is an element which ought to be considered. If you believe it was the condition of the market, or that the peacock pattern had played out and was not in demand any more, and that that was the reason they were not selling them, or that times were hard and people were not buying them as freely as they had done, then that would be considered by you. If the stuff of which these covers are made—that is the material in its crude state, in its state of yarn and chenille—was especially prepared for these table covers and could not be used in that condition for anything else, but had to be redyed or other money spent on them to put them into condition to use in something else, if that was made necessary by reason of the stories Mr. Smith was circulating about Mr. Stroud, that must be paid for. If the table covers you believe he knew was on hand he would have sold, if it had not been for Mr. Smith, you ought to give him the profit that he would have made on them. You ought not to give him that which has been calculated in one estimate here what all those things cost, because that is giving him the penny and the cake, too, for Mr. Stroud has the table covers, and he must not be paid the whole thing, for the table covers and yet keep the table covers. If he had given the table covers to Smith, or gone out into the market and said, "I had to sell them at auction,"

there would have been something to go on in that respect. Therefore, the only thing to be considered is how many more table covers would he have sold if it had not been on account of this notice, and how much profit would have been made on them. How much other yarn, how much other material that he had to spend so much more money on to make it usable in some other way, and even when it was so treated, if it was depreciated in value, that is also to be considered. Take every element of the loss that is directly traceable to the act of Smith, and charge it against him, because he must pay any damage that his act has caused, even if it was an innocent act. I mean by that an act not intended to injure, but if he made a mistake. A man cannot make a mistake and say, " Oh, well, I made that mistake; I beg your pardon. I didn't mean to break your hat. I just trod on it and mashed it," and say, " I beg your pardon," and call it square. He has got to pay for your hat. And so here, if he has injured Mr. Stroud, he must pay for it.

Now, gentlemen, I do not think that it is necessary for me to say much more to you, except to call your attention to one more thing, because counsel on both sides have expressed the opinion that I would speak on the subject, and that is, what effect has this matter of saying, " Well, he knew the patent had run out," that is to say Stroud knew it had run out, and Stroud knew when Mr. Smith notified his customers that his patent was pending, that it was not true, and therefore Smith was not to be held responsible, because Stroud knew that what he said was not true. Well, I do not think that that, gentlemen, relieves Mr. Smith in any way at all. If a man calls me a thief and circulates it around among other people that I am a thief, the fact that I know I am not does not relieve him at all. If he has injured me in the estimation of other people, if other people won't trust me because he calls me a thief, the fact that I know that I am not a thief does not relieve him of the consequences of what he said. So, if Mr. Smith, when he circulated that report around that Stroud was infringing on his patent, injured Stroud's business, he must pay the consequences, whether Stroud knew it was true or whether he knew it was not; and even if the customer knew it was not true, it does not make any difference. Even if the customer said, " I know it is not true, but I don't intend to take chances of a lawsuit. I

am not going to take chances of defending a patent suit, and therefore I will not deal in this thing; " if the remark of Mr. Smith drove that customer away he must pay all the consequences.

Now that, gentlemen, I think is all that is necessary for me to say.

The points of the defendants I decline to affirm.

Mr. Biddle: The plaintiff does not wish to recover if the jury believe that Smith made an honest mistake. The plaintiff claims that the notices were given maliciously by the defendants, and therefore he should pay the damage that has actually resulted.

The Court: Counsel for the plaintiff says that if you believe this was an honest mistake on the part of Mr. Smith, then he does not want anything.

I say to you under the law that he is entitled to something, but if he does not ask for it he need not have it, and if he puts himself in that position you can therefore say—and it is the agreement of Mr. Stroud and his counsel which you are of course to follow—if you believe it was an honest mistake, and give a verdict for the defendants. And counsel for the plaintiff further says that he does not want anything unless you find it was a malicious act on the part of Mr. Smith.

Mr. Biddle: That is what I allege it is.

The Court: Of course. He says if you find it is a malicious act he even then does not want all that the law would give him, because I have told you as a matter of law he is entitled to punitive damages, or smart money, in addition to actual damages. He says he does not want that. He simply wants his actual damage and nothing more, if you find it to be malicious. And you can, of course, be guided by that.

Therefore, it comes to this: I wish this had been presented to me earlier. It would have saved a great deal of what I have said, but the position now is, if you find Mr. Smith made an honest mistake about this, give a verdict for defendants. If you find Mr. Smith did not make an honest mistake, but did it maliciously, then give a verdict for the plaintiff for the amount of the actual damages.

Defendants' first point and the answer thereto were as follows:

2. If the defendants issued the notices in good faith and

under a mistaken belief that their patent had not expired, they cannot be held responsible in this action without proof of fraud or malice.  *Answer:* Refused. [1]

Verdict and judgment for plaintiff for $2,030.08.  Defendants appealed.

*Errors assigned* among others were (1) above instructions, quoting them; (2) that the court erred in its theory of the law of the case as embodied in its charge as a whole in respect to the measure of damages.

*George Bradford Carr* and *Hector T. Fenton,* for appellants.— There can be no such thing as exemplary or punitive damages for slander of a man's goods.  One cannot speak defamatory words of inanimate things, which entitle the owner thereof to so-called "smart" money: Odgers on Libel and Slander, * 139; Wren v. Weild, L. R. 4 Q. B. 730; Society v. Tilghman's Patent Sand Blast Co., L. R. 25 Ch. D. 1; Halsey v. Brotherhood, L. R. 19 Ch. D. 386; Cardon v. McConnell, 120 N. C. 461; May v. Anderson, 4 Ind. App. Ct. Rep. 251; Harrison v. Howe, 67 N. W. Rep. 527; Hovey v. Rubber Tip Pencil Co., 33 N. Y. Superior Ct. Rep. 522.

Whatever may be the view of this Court as to any other branch of the case, it cannot be doubted that the cause of action set forth in the statement, whether wilful falsity or malice, was or was not necessary, and whether it was or was not proved, there was no warrant for exemplary damages, no warrant for general damages, and no warrant for anything but special damages; and finally no warrant in the law for the trial judge's definition of "actual" damages, if, indeed, he used that word as synonymous with "special" damages, which is more than doubtful on the face of the change: Odgers on Libel and Slander, * 297.

*Charles Biddle,* for appellee.

OPINION BY MR. JUSTICE MITCHELL, February 5, 1900:

The appellants issued notices to the plaintiff and to some of the latter's customers that plaintiff was infringing appellants' patent in certain goods, and threatening suit if plaintiff con-

tinued to make or his customers to buy such goods. It is admitted that the statement was false, the appellants' patent having expired at that time; and the jury have found that the notices were malicious, at least in the legal sense, that the appellants had no reasonable ground to believe them to be true at the time they issued them. Under these circumstances they were clearly liable to punitive damages if the jury should find, as under the evidence they might, that there was not only legal malice, but an actual malicious intent to injure.

But the plaintiff having disclaimed any demand for damages unless for malicious issue of the notices, and even in such case limited his demand to damages actually or specially suffered, the learned judge practically withdrew the preceding part of his charge, and restated the case to the jury in the following words: "Therefore, it comes to this: I wish this had been presented to me earlier. It would have saved a great deal of what I have said, but the position now is, if you find Mr. Smith made an honest mistake about this, give a verdict for defendant. If you find Mr. Smith did not make an honest mistake, but did it maliciously, then give a verdict for the plaintiff for the amount of the actual damages." This was the close of the charge, and if there was any error in the preceding part, which however is not apparent, it was cured by this positive and explicit direction with which the jury were sent out to consider the case, and the law so laid down was in exact accord with what the appellants contend for here.

The assignments of error cannot be sustained. Such of the appellants' points as were not practically affirmed by the part of the charge above quoted, were based on the view that the court should declare as matter of law that if plaintiff and his customers knew or were informed that appellants' patent had expired, their cessation of the sales and purchases could not be legally attributed to the notices sent by appellants. But, as said by the learned judge, the customers might not choose to stand lawsuits though convinced that they could win. The question here was whether the notices had a tendency to deter customers from buying, and whether the latter were in fact so deterred. This was not for the court, but for the jury.

The assignments in regard to the measure of damages are to the "theory of the court," and fail to point out any specific

error which the court is alleged to have committed.    The rule laid down in the concluding and effective part of the charge was that, if the appellants' action was malicious, the jury should give "a verdict for the plaintiff for the amount of actual damages."    To this rule the appellants can make no valid objection, and if the jury misapplied it under the evidence, the remedy was for the court below on rule for new trial.

Judgment affirmed.